IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

Kimberly Carter, ) C.A. No. 0:15-2583-HMH-PJG
)
        Plaintiff, )
)
vs. )
) **OPINION & ORDER**
Ronaldo Myers, Director, in his individual )
and official capacity; Kathy Harrell, )
Asst director, in her individual and )
official capacity; M. Gordon, Booking )
Officer, in her individual and official )
capacity; Sargent on duty, in their )
individual and official capacity; Sargent )
Angela Rice, Inmate Records, in her )
individual and official capacity; )
Curtis Bufford, programs/admin/training, )
in his individual and official capacity; )
Lt. James Hayes, in his individual and )
official capacity; Alvin S. Glenn )
Detention Center, )
)
        Defendants. )

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 of the District of South Carolina.[1] Kimberly Carter ("Carter"), proceeding pro se, alleges claims pursuant to 42 U.S.C. § 1983 for violation of the First, Fourth, and Fourteenth

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

Amendments, and a claim pursuant to the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, et seq.[2] In her Report and Recommendation, Magistrate Judge Gossett recommends granting in part and denying in part the Defendants' motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Carter was detained at the Alvin S. Glenn Detention Center on December 31, 2012. (Am. Compl. 8, ECF No. 55.) Carter is an adherent of Islam and wears a headscarf, commonly referred to as a "hijab." Carter alleges that her "religious belief of Islam requires that [she] wear a headscarf at all times especially around unrelated men." (Id., ECF No. 55.) Defendant M. Gordon ("Gordon"), the booking officer, requested that Carter remove her hijab "because no 'doo-rags' were allowed." (Id., ECF No. 55.) Carter alleges that she informed Gordon that she wore the hijab for religious purposes, but Gordon informed her that she could not wear it. Carter removed the hijab and her photograph was taken without the hijab. (Id., ECF No. 55.) Carter contends that the Defendants "unlawfully took a picture of [her] without [her] headscarf and is allowing for it to be portrayed to men of no relation to" her in continuing violation of her rights. (Id., ECF No. 55.) In her response in opposition to the Defendants' motion for summary judgment, Carter alleges that her hijab was not returned to her until her release from custody the following day. (Carter Mem. Opp'n Summ. J. 2, ECF No. 90.) Carter seeks injunctive relief and nominal, compensatory, and punitive damages.

---

[2] In her complaint, Carter states that she is also alleging a state law claim pursuant to the "South Carolina Free Exercise of Religion Act." (Am. Compl. 3, ECF No. 55.) Although unclear, Carter appears to be attempting to assert a claim under the South Carolina Religious Freedom Act, S.C. Code Ann. § 1-32-10, et seq. Defendants did not move for summary judgment on Carter's state law claim.

The Defendants moved for summary judgment on February 9, 2017. (Defs. Mot. Summ. J., ECF No. 78.) Carter submitted a response on April 10, 2017. (Carter Mem. Opp'n Summ. J., ECF No. 90.) The magistrate judge issued a Report and Recommendation on July 5, 2017. (R&R, ECF No. 98.) The Defendants filed objections July 19, 2017. (Objs., ECF No. 100.) This matter is ripe for consideration.

## II. REPORT AND RECOMMENDATION

In the Report and Recommendation, the magistrate judge recommends granting the Defendants' motion for summary judgment with respect to Carter's First Amendment claim. In addition, the magistrate judge recommends dismissing Carter's RLUIPA claims against the Defendants in their individual capacities pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Further, the magistrate judge recommends dismissing Carter's Fourth and Fourteenth Amendment claims against the Defendants in their individual and official capacities.

With respect to the remaining claims, the RLUIPA official capacity claim and First Amendment § 1983 official capacity claim, the magistrate judge recommends denying the Defendants' motion for summary judgment on Carter's request for (1) prospective injunctive relief,[3] (2) damages under the Prison Litigation Reform Act ("PLRA"), and (3) damages under the RLUIPA. Further, the magistrate judge recommends denying the Defendants' motion for summary judgment on Carter's First Amendment § 1983 municipal liability claim against the Defendants in their official capacity finding that Carter had stated a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In addition, the magistrate judge

---

[3] The magistrate judge recommends granting the Defendants' motion for summary judgment on Carter's request for injunctive relief based on past conduct as moot.

recommends denying the Defendants' summary judgment motion on the argument that Carter's RLUIPA claim fails on the merits.

### III. DISCUSSION OF THE LAW

#### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. Cnty. of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. Objections to the Report and Recommendation

Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, the court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Carter has not submitted any objections to the magistrate judge's Report and Recommendation. Therefore, after review, the court adopts the portions of the Report and Recommendation to which no objections have been filed. The Defendants, however, raised several specific objections, which the court will address individually below. (Objs., generally, ECF No. 100.) Carter filed a motion for an extension of time to file a response to the Defendants' objections on August 4, 2017. (Carter Mot. Extension, ECF No. 102.) The court granted Carter's motion and extended the time to respond to the Defendants' objections until August 11, 2017. (Aug. 4, 2017 Order, ECF No. 103.) However, to date, no response has been received.

#### 1. Punitive Damages under RLUIPA

The Defendants object that the magistrate judge failed to address their claim that punitive damages are not recoverable under the RLUIPA against the Defendants in their official capacities. In their motion for summary judgment and objections, the Defendants allege that punitive damages are not available against a municipality under § 1983, citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive

damages under 42 U.S.C. § 1983."), and Brandon v. Holt, 469 U.S. 464 (1985). The court agrees that punitive damages are not available for § 1983 official capacity claims. However, a RLUIPA claim is independent from a claim under § 1983. RLUIPA has its own "express, private means of redress in the statute itself" independent of § 1983. City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, 121 (2005) ("The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983."); Chase v. City of Portsmouth, No. CIV.A. 2:05CV446, 2005 WL 3079065, at *5 (E.D. Va. Nov. 16, 2005) (unpublished) (dismissing plaintiffs' § 1983 claim asserting RLUIPA as redundant where "the plaintiffs raised a claim under RLUIPA directly and through Section 1983" and finding that "the plaintiffs cannot use Section 1983 as a vehicle for a RLUIPA claim because the statute provides . . . its own comprehensive enforcement scheme" (citing City of Rancho Palos Verdes, 544 U.S. at 121)); Christian Methodist Episcopal Church v. Montgomery, No. 4:04-CV-22322-RBH, 2007 WL 172496, at *6 (D.S.C. Jan. 18, 2007) (unpublished) ("[A] § 1983 action does not lie under RLUIPA."); Williams v. Gerges, No. 05-CV-2555 (SLT), 2005 WL 1773857, at *6 (E.D.N.Y. July 26, 2005) (unpublished) ("The RLUIPA provides individuals with a private right of action, stating that '[a] person may assert a violation of [the RLUIPA] as a claim . . . in a judicial proceeding and obtain appropriate relief against a government.'" (quoting 42 U.S.C. § 2000cc-2(a))).

The RLUIPA provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain **appropriate relief** against a government." 42 U.S.C.A. § 2000cc-2 (emphasis added). The Defendants have failed to address in their

objections whether punitive damages are permitted under the RLUIPA in this case.[4] Further, research reveals no case law within the Fourth Circuit directly addressing the issue of whether punitive damages are available in a case not involving Eleventh Amendment sovereign immunity such as the case at bar. Madison v. Virginia, 474 F.3d 118, 133 (4th Cir. 2006) (finding that RLUIPA actions for monetary damages are barred against the state based on sovereign immunity); Sossamon v. Texas, 563 U.S. 277, 293 (2011) (resolving circuit split regarding Eleventh Amendment sovereign immunity application to RLUIPA claims in favor of Madison).

The Supreme Court in Sossamon recognized that no monetary damages were available under RLUIPA where Eleventh Amendment sovereign immunity applied. 563 U.S. at 293. The Defendants have failed to offer any basis to enjoy the protections afforded by the Eleventh Amendment and any argument regarding the availability of punitive damages under the RLUIPA in this action. "Eleventh Amendment immunity does not extend to counties and similar municipal corporations." Cash v. Granville Cty. Bd. of Educ., 242 F.3d 219, 222 (4th Cir. 2001). The Defendants contend that Richland County is the proper defendant in this case. (Objs. 4, ECF No. 100.) Based on the foregoing, the Defendants' motion for summary judgment on the availability of punitive damages for the RLUIPA claim is denied without prejudice.

---

[4] The Defendants argued in their motion for summary judgment that Carter was barred from recovering damages under RLUIPA against the defendants in their official capacities under Madison v. Virginia, 474 F.3d 118, 133 (4th Cir. 2006), which held that monetary damages under RLUIPA were not available against the named defendants in their official capacities because sovereign immunity applied. The magistrate judge correctly found that this argument failed because the Defendants have not submitted any evidence that the Defendants are state employees that are entitled to sovereign immunity. To the contrary, the Defendants allege that they are employees of Richland County.

7

## 2. Compensatory Damages

The Defendants object to the magistrate judge's finding that "the defendants' argument to limit the damages [under the PLRA] available to Carter in this case" is premature. (R&R 7, ECF No. 98.) The PLRA places limitations on a prisoner's ability to recover damages in civil suits. Section 1997e(e) provides as follows:

> Limitation on Recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . .

42 U.S.C. § 1997e(e). "It is the nature of the relief sought, however, and not the underlying substantive violation that controls this limitation on recovery in § 1997e(e)." Jones v. Price, 696 F. Supp. 2d 618, 624 (N.D. W. Va. 2010) (citing Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007)). The magistrate judge found that genuine issues of material fact exist regarding damages in this case. The court disagrees.

Carter clearly testified during her deposition that she is seeking only emotional damages. Carter testified in pertinent part as follows:

> Q. Have we talked about all the damages you're claiming, and what I understand them to be, emotional damages?
> A. Emotional damages. Yes. I am suing for emotional damages.
> * * * * *
> Q. Any – any physical harm?
> A. Physical harm? No one hurt me physically; no one hurt me physically, no.
> **Q. And you've never – so you've never been treated for any type of physical harm as a result of your stay in the detention center, is that correct?**
> **A. That's correct.**

(Def. Mem. Supp. Summ. J. Ex. 2 (Carter Dep. 95), ECF No. 78-2 (emphasis added).) In Carter's memorandum in opposition to the Defendants' motion for summary judgment, she alleges that she did suffer physical injury in that she has been diagnosed with post traumatic

stress disorder and suffers sleep disturbances, irritability, anxiety, depression and paranoia. (Carter Mem. Opp'n Summ. J. 3, 7, ECF No. 90.) In support of her position, she attaches certain medical records. The records indicate that she has a diagnosis of delusional disorder and unspecified mental disorder and has severe headaches/migraines, and heart problems/hypertension. (Id. Ex. 1 (Medical Records), ECF No. 90-1.) However, these medical records do not provide any evidence that she has been diagnosed with post traumatic stress disorder or that she suffered from any physical injury as a result of the events in this case. (Id. Ex. 1 (Medical Records), ECF No. 90-1.) Moreover, Carter specifically stated in her deposition that she has never been treated for any physical injuries as a result of the events in this case.

Further, § 1997e(e) does not define "physical injury," and although the Fourth Circuit has not addressed this issue, the Fifth, Sixth, and Eleventh Circuits have found that § 1997e(e) restricts recovery for constitutional violations unless the plaintiff "can demonstrate a (more than de minimis) physical injury." Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Flanory v. Bonn, 604 F.3d 249, 254 (6th Cir. 2010). Based on the foregoing, the court grants the Defendants' motion for summary judgment on Carter's claims for compensatory damages.

However, the court finds that § 1997e(e) does not preclude the recovery of nominal and punitive damages for the violation of a constitutional right where there is no physical injury. Moore v. Easley City Police Dep't, C/A No. 8:16-525-MBS, 2016 WL 1444414, at *3 (D.S.C. Apr. 13, 2016) ("Although the Court of Appeals for the Fourth Circuit has not addressed the issue, a majority of other Circuits that have addressed § 1997e(e)'s limitation on recovery have held that § 1997e(e) does not prevent an inmate from seeking nominal damages and punitive

damages for violation of constitutional rights in the absence of injury."); Jones v. Price, 696 F. Supp. 2d 618, 625 (N.D. W. Va. 2010) (holding that prisoner's claim for compensatory damages was barred by Section 1997e(e) because the prisoner did not allege physical injury and that the PLRA did not bar the prisoner's claim for nominal or punitive damages); Searles v. Van Bebber, 251 F.3d 869, 879 (10th Cir. 2001) (noting that under the PLRA, punitive damages may be recovered for a First Amendment violation without a showing of compensable physical injury).[5] In sum, pursuant to the PLRA, Carter is barred from recovery of any compensatory damages on her § 1983 claims or RLUIPA claim. Koger v. Bryan, 523 F.3d 789, 804 (7th Cir. 2008) (finding that "because the relief herein is being sought by a former prisoner, the Prison[] Litigation Reform Act is applicable" to RLUIPA claim); Geiger v. Jowers, 404 F.3d 371, 375 (5th Cir. 2005) ("[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury.").

### 3. Substitution of Richland County for the Defendants in their Official Capacities

The Defendants object that the magistrate judge failed to substitute Richland County for the claims against the Defendants in their official capacities. "In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and

---

[5] In Jones, the district court recognized the circuit split which exists regarding the recovery of nominal and punitive damages in the absence of physical injury. After analysis, the court adopted "the majority's interpretation of § 1997e(e)'s limitation on recovery," holding that "§ 1997e(e) of the PLRA does not bar recovery of nominal or punitive damages in the absence of a physical injury where an inmate can show an injury of constitutional dimensions." Jones, 696 F. Supp. 2d at 625 (listing cases). The court agrees with this analysis and finds that nominal and punitive damages are not barred from recovery under the PLRA in cases involving only emotional injury.

thus the [government entity] itself. . . . The real party in interest is the government entity, not the named official." Lewis v. Clarke, 137 S. Ct. 1285, 1291 (2017); Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000) ("[B]ecause the real party in interest in an official-capacity suit is the entity, a plaintiff can only recover damages from the entity itself, in contrast to a personal-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets."). However, formal substitution is not required. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 161 (1985); Huggins v. Prince George's County, 683 F.3d 525, 532 n.3 (4th Cir. 2012) ("[W]e treat the County and the Officials sued in their official capacities as the County."). Based on the foregoing, the court declines to substitute Richland County.

### 4. Municipal Liability

The Defendants object to the magistrate judge's finding that "Carter has adequately pled the existence of a policy or custom to state claims against the defendants in their official capacities" under § 1983. (R&R 9, ECF No. 98.) In essence, the Defendants are alleging that Carter's § 1983 claims should be dismissed pursuant to Rule 12(b)(6) because she has failed to state a claim for relief. "Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994). "Plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately

caused the deprivation of their rights." Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). Carter alleges that she was told by the booking officer that "no 'doo rags' were allowed." (Am. Compl. 8, ECF No. 55.)

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999)).

"It is well settled that isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes. Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice." Id. at 473 (internal quotation marks and citations omitted). In Jordan, the Fourth Circuit found that at the pleading stage, a plaintiff is not required to "detail the facts underlying [the] claims," or "plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Jordan, 15 F.3d at 339. However, this case predates Iqbal and Twombly, which are the controlling cases with respect to the pleading standard under Rule 8(a) of the Federal Rules of Civil Procedure. The Fourth Circuit in Cook v. Howard, No. 11-1601, 2012 WL 3634451 (4th Cir. Aug. 24, 2012) (unpublished), considered the impact of Twombly and Iqbal on the pleading requirements for alleging an official policy or custom for purposes of municipal liability noting that "these later 'decisions require more specificity from complaints in federal civil cases than was

12

heretofore the case.'" Cook, 2012 WL 3634451, at *4 (affirming dismissal of the Monell claims) (quoting Robertson v. Sea Pines Real Estate Cos., 679 F.3d 278, 288 (4th Cir. 2012)).

> Pursuant to *Twombly* and *Iqbal*, a complaint will survive a motion to dismiss only if it contains factual allegations in addition to legal conclusions. Factual allegations that are simply labels and conclusions, and a formulaic recitation of the elements of a cause of action are not sufficient. In addition, the complaint must contain enough facts to state a claim to relief that is plausible on its face. That is to say, the factual allegations must be enough to raise a right to relief above the speculative level. Instead, the allegations must be sufficient to permit the court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense. For these reasons, courts need not accept the legal conclusions drawn from the facts [alleged in a complaint], and [they] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.

Id.; Taylor v. Somerset Cty. Commissioners, Civil Action No. RDB-16-0336, 2016 WL 3906641, at *10 (D. Md. July 19, 2016).

Carter has plausibly pled that the Defendants have a policy or custom of prohibiting all headcoverings because she was informed by the booking officer that "doo rags" were not allowed. (Am. Compl. 8, ECF No. 55.) The Defendants allege that

> [e]ven if that was said, that is not evidence of a persistent and widespread practice. "Doo rags" are not hijabs, and if the officer who allegedly made that statement thought that was [the] case, she was obviously in error, and a single erroneous comment is not and cannot be deemed proof of a persistent and widespread practice.

(Objs. 7, ECF No. 100.) The court disagrees. Pursuant to Rule 12(b)(6), Carter is not required to plead multiple instances of wrongful conduct. Further, construing the complaint liberally, Carter has alleged that the Defendants have an express policy or custom of prohibiting headcoverings for the booking photograph and while housed in the detention center and that the Defendants have not restricted access to the photograph of Carter without her hijab.

13

The court recognizes that the Defendants' policy may be "reasonably related to legitimate penological interests."[6] Hines v. S.C. Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998).[7] However, the Defendants have failed to come forward with any argument, evidence, or affidavits to support the conclusion that the Defendants either do not have a policy in place requiring the removal of all head coverings or that the policy in place is reasonably related to legitimate penological interests.[8] Based on the foregoing, the court denies the Defendants' motion for summary judgment on the § 1983 First Amendment claim against the Defendants in their official capacity.

### 5. RLUIPA Claim

Lastly, the Defendants object to the magistrate judge's recommendation to deny the Defendants' motion for summary judgment on the merits of Carter's RLUIPA claim. Under RLUIPA, Carter bears the initial burden of proving that the Defendants' policy implicates the exercise of her religion. Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). "RLUIPA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief, but,

---

[6] The only § 1983 claim remaining against Defendants in their official capacities is the First Amendment claim seeking prospective injunctive relief based on the continued ability to view Carter's booking photograph in which she is not wearing a headscarf and nominal damages.

[7] The court considers the following facts in making the reasonableness determination: "(1) a regulation must have a logical connection to legitimate governmental interests invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates' rights should not severely impact other inmates, prison officials and allocation of prison resources generally." Hines, 148 F.3d at 358.

[8] In the Report and Recommendation, the magistrate judge noted that "[b]ecause the defendants fail to provide any argument on [the First Amendment claim] under the proper standard, the defendants' motion should be denied to the extent they seek summary judgment on the merits of Carter's First Amendment claim." (R&R 23, ECF No. 98.) The Defendants did not object to this portion of the Report and Recommendation.

14

of course, a . . . request for an accommodation must be sincerely based on a religious belief and not some other motivation." Id. (internal citations and quotation marks omitted). Further, Carter must show that the Defendants "substantially burdened th[e] exercise of religion." Id.

The Defendants do not dispute that Carter's belief is based on a sincerely held religious belief, which was substantially burdened by the Defendants. Thus, the burden shifts to the Defendants to show that requiring the removal of the headscarf for her booking photograph and while she was housed at the Defendants' facility "(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest." Id. at 863 (quoting § 2000bb-1(b)). The Defendants have alleged that a compelling government interest exists because photographs are necessary to identify inmates for security purposes and to assist in apprehension of an inmate in the event of an escape. (Objs. 8-9, ECF No. 100.) There is no question that "prisons have a compelling interest in the quick and reliable identification of prisoners." Holt, 135 S. Ct. at 864.

However, the Defendants have failed to satisfy their burden of proving that the least restrictive means was utilized under the facts of this case.

> The least-restrictive-means standard is exceptionally demanding, and it requires the government to sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]. [I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it.

Id. (internal citations and quotation marks omitted). Carter submits that her Muslim faith requires that she wear a hijab in the presence of unrelated men. (Am. Compl., generally, ECF No. 55.); (Carter Mem. Opp'n Summ. J., generally, ECF No. 90.) The Defendants provide no explanation for why requiring Muslim women to remove the hijab for booking photographs and

15

while in custody and without restricting access to the photographs is the least restrictive means of identifying inmates. To the contrary, the Defendants rely on Holt to support their position.

In Holt, the Supreme Court held that the defendant had failed to establish that a no beard policy was the least restrictive alternative where the plaintiff, a Muslim male inmate, alleged that his religious beliefs required that he have a ½ inch beard. 135 S. Ct. at 865. The Supreme Court discussed the dual photo method proposed by the plaintiff as a less restrictive alternative. Id. The dual photo method requires

> that all inmates be photographed without beards when first admitted to the facility and, if necessary, periodically thereafter. Once that is done, an inmate like petitioner could be allowed to grow a short beard and could be photographed again when the beard reached the ½ inch limit. Prison guards would then have a bearded and clean-shaven photo to use in making identifications.

Id. However, the Supreme Court did not decide whether the "dual photo" method was the least restrictive means as that issue was not before the court. The court found that the defendant had failed to even consider any less restrictive alternatives noting that the defendant "could satisfy its security concerns through a means less restrictive than denying [the plaintiff] the exemption he seeks." Id. at 866.

As the magistrate judge noted there is no evidence that a "dual photo" method was utilized by the Defendants in this case. Thus, the court fails to see how Holt is instructive. In addition, the Defendants have failed to present any evidence to show that they "acknowledge[d] and g[ave] some consideration to less restrictive alternatives." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012). The Defendants have "not satisf[ied] their burden of showing that the Policy was the least restrictive means of furthering the identified compelling interests." Id. at 204. To the contrary, the Defendants have failed to present any evidence of why the practice

16

employed in this case was the least restrictive means of identification. Based on the foregoing, the Defendants' motion for summary judgment on Carter's RLUIPA claim against the Defendants in their official capacities is denied.

### IV. CONCLUSION

In conclusion, the court adopts the Report and Recommendation in this case to the extent it is consistent with this opinion. The Defendants' motion for summary judgment is granted in part and denied in part. Therefore, the remaining claims are Carter's § 1983 First Amendment claim against the Defendants in their official capacities seeking nominal damages and prospective injunctive relief, and the RLUIPA claim against the Defendants in their official capacities seeking nominal and punitive damages, and prospective injunctive relief.

It is therefore,

**ORDERED** that the Defendants' motion for summary judgment, docket number 78, is granted in part and denied in part.

**IT IS SO ORDERED**.

    s/Henry M. Herlong, Jr.
    Senior United States District Judge

Greenville, South Carolina
August 15, 2017